## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Gail Gray, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Keurig Dr Pepper Inc.<br><br>Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Gail Gray ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Keurig Dr Pepper Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

### NATURE OF THE ACTION

1.     Defendant formulates, manufactures, advertises, and sells its Mott's "100%" juices (the "Products")[1] throughout the United States, including New York.  Defendant markets

---

[1] The Products include all flavors of Defendant's lines of products as depicted on its Amazon.com listings: **(1)** Amazon.com : Mott's 100% Original Apple Juice, 6.75 Fl Oz Boxes, 32 Count (4 Packs Of 8), 2 Servings Of Fruit, 100% Fruit Juice, Gluten-free, Caffeine-free, Kosher, Contains No Artificial Colors Or Sweeteners : Fruit Juices : Grocery & Gourmet Food; **(2)** Amazon.com : Mott's 100% Apple White Grape Juice, 8 Fl Oz Bottles, 24 Count (4 Packs Of 6), No Added Sugar, Excellent Source Of Vitamin C, 2 Servings Of Fruit Per Bottle, Gluten & Caffeine Free, On-the-go : Grocery & Gourmet Food; **(3)** Amazon.com : Mott's 100% Original Apple Juice, 64 fl oz bottle : Grocery & Gourmet Food; **(4)** Amazon.com : Mott's 100% Original Apple Juice, 6.75 Fl Oz Boxes, 32 Count (4 Packs Of 8), 2 Servings Of Fruit, 100% Fruit Juice, Gluten-free, Caffeine-free, Kosher, Contains No Artificial Colors Or Sweeteners : Fruit Juices : Grocery & Gourmet Food (last accessed November 24, 2025)

its Products in a systematically misleading manner by conspicuously misrepresenting on the labels

of the Products that they are comprised of "100% Juice." Defendant reinforces these

misrepresentations by adding vignettes of the fruits and including the claim in the title of the

Products.

2.      Unbeknownst to consumers, however, the Products all share a common ingredient

that belies their "100% Juice" representations: ascorbic acid—a well-documented synthetic

ingredient.

3.      Defendant's most recent labeling of its Products are depicted below:






Mott's 100% Apple White Grape Juice, 8 Fl Oz Bottles, 24 Count (4 Packs Of 6), No Added Sugar, Excellent Source Of Vitamin C, 2 Servings Of Fruit Per Bottle, Gluten & Caffeine Free, On-the-go

Visit the Mott's Store

4.8 ★★★★☆ (22,715)  |  Ask questions and search reviews

$ No better price found

Amazon's Choice

7K+ bought in past month

$13.92 ($0.07 / fluid ounce)
Price history

✓prime Tomorrow

Thank you for being a Prime Member. Pay $13.92 $0.00 for this order; get a $200 Amazon Gift Card upon approval for the Amazon Business Prime Card. Terms apply. Learn more

Flavor Name: Apple White Grape

| Apple | Apple Cherry | Apple White Grape |

Size: 8 Fl Oz (Pack of 24)

| 8 Fl Oz (Pack of 24) | See 8 options with no featured offers |
| $13.92 ($0.07 / fluid ounce) FREE Delivery Tomorrow | |

Click to see full view




Mott's 100% Original Apple Juice, 6.75 Fl Oz Boxes, 32 Count (4 Packs Of 8), 2 Servings Of Fruit, 100% Fruit Juice, Gluten-free, Caffeine-free, Kosher, Contains No Artificial Colors Or Sweeteners

Visit the Mott's Store

4.8 ★★★★☆ (5,242)  |  Ask questions and search reviews

$ No better price found

Amazon's Choice

10K+ bought in past month

-9% $11.88 ($0.06 / fluid ounce)
Typical price: $13.06 ⓘ    Price history

✓prime Overnight

Thank you for being a Prime Member. Pay $11.88 $0.00 for this order; get a $200 Amazon Gift Card upon approval for the Amazon Business Prime Card. Terms apply. Learn more

Flavor Name: Apple

| Apple | Apple White Grape | Fruit Punch |

Size: 4.23 Ounce



4.    Defendant's deceptive conduct is further underscored by the fact that other fruit juice products labeled with "100% juice" representations do not, in fact, contain any additional non-juice ingredient. One of these competing brands is depicted below, by way of illustration:



Ingredients:
100% Content of Organic NFC Apricot Juice and Single Strength Pulp. Not From Concentrate.



5.    As explained in greater detail below, disclosing these additional ingredients is not just industry practice; it is required by law. Defendant knows this, yet it chooses to ignore the law to increase its sales by taking advantage of unexpecting consumers.

6.    As a result of its deceptive conduct, Defendant is, and continues to be, unjustly enriched at the expense of its consumers.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

8.    This Court has personal jurisdiction over Defendant because it conducts and transacts business in the State of New York, including this District, thereby purposefully availing itself to the benefits of the forum.  Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District, including Plaintiff's purchasing the Products in this District.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place in this District.

## PARTIES

10.    Plaintiff Gail Gray is a citizen of New York, who resides in Brooklyn, New York. Plaintiff purchased Defendant's Products from its Amazon.com storefront for her personal use on various occasions within the applicable statute of limitations, with her most recent purchase

of the "Apple White Grape" Product taking place on or about July 11 of 2025.[2] Prior to making

her purchases, Plaintiff Gray saw that the Products were labeled and marketed as "100% Juice."

Plaintiff Gray relied on Defendant's representations when she decided to purchase the Products

over comparable products that did not make those claims. Plaintiff Gray saw Defendant's

representations prior to and at the time of her purchases and understood them as a representation

and warranty that the Products were exclusively made from a "100% Juice." Plaintiff Gray relied

on these representations and warranties in deciding to purchase the Products. Accordingly, those

representations and warranties were part of the basis of her bargains, in that she would not have

purchased the Products on the same terms had she known that those representations were not

true. Furthermore, in making her purchases, Plaintiff Gray paid a substantial price premium due

to Defendant's false and misleading representations concerning the Products. Plaintiff Gray,

however, did not receive the benefit of her bargains because those representations were not, in

fact, true.

11.     Defendant Keurig Dr Pepper Inc. is a Delaware corporation headquartered in

Burlington, Massachusetts.  Defendant manufacturers, packages, labels, advertises, markets,

distributes and sells the Products in New York and throughout the United States.

## GENERAL ALLEGATIONS

### *Overview of Defendant's Deceptive Business Practices*

12.     The global juice market has experienced a significant burst of growth as health-

oriented consumers have turned to natural juices due to their rich nutritional content: which

includes essential vitamins, minerals, and antioxidants. These perceived health benefits, along

---

[2] Amazon.com : Mott's 100% Apple White Grape Juice, 8 Fl Oz Bottles, 24 Count (4 Packs Of 6), No Added Sugar, Excellent Source Of Vitamin C, 2 Servings Of Fruit Per Bottle, Gluten & Caffeine Free, On-the-go : Grocery & Gourmet Food (last accessed November 24, 2025).

with the increasing aversion toward the synthetic ingredients found in carbonated sodas, have

made fruit juices top contenders in the beverage industry.[3] Indeed, recent consumer surveys

indicate that approximately "half of Americans say they seek out natural flavors at least some of

the time," with most of these respondents looking for products that are "not artificial or

synthetic."[4] In fact, the second largest contributing factor toward consumer confidence regarding

the safety of food is that it be labeled as "Having No Artificial Ingredients."[5]

13.     In response to this rise in consumer demand, food and beverage manufacturers

pivoted by producing fruit juices *en masse*. Despite this, however, many of these so-called "fruit

juices" are merely shadows of regular sodas: containing the same high sugar content and a

plethora of synthetic ingredients. Defendant's Products fall squarely within this gamut of

deceptive conduct.

14.     By labeling its Products as being made with a "100% Juice," Defendant

deceptively attempts to distinguish itself from other fruit juices that do contain additional

synthetic preservatives. Defendant's deceptive marketing campaign helped place the Products as

a top-selling juice on Amazon.com. As a result, Defendant has enjoyed a virtual monopoly and

commanded a substantial premium over other "100% juice" beverages with added ingredients.

---

[3] IMARC, *Fruit Juice Market Report by Product Type (100% Fruit Juice, Nectars, Juice Drinks, Concentrates, Powdered Juice, and Others), Flavor (Orange, Apple, Mango, Mixed Fruit, and Others), Distribution Channel (Supermarkets and Hypermarkets, Convenience Stores, Specialty Food Stores, Online Retail, and Others), and Region 2023-2028*, https://www.imarcgroup.com/fruit-juice-manufacturing-plant (last accessed November 24, 2025).
[4] International Food Information Council, *IFIC Survey: From "Chemical-sounding" to "Clean": Consumer Perspectives on Food Ingredients* (June 17, 2021), https://foodinsight.org/ific-survey-from-chemical-sounding-to-clean-consumer-perspectives-on-food-ingredients/ (last accessed November 24, 2025).
[5] International Food Information Council, *2023 Food & Health Survey* (May 23, 2023) at 73, https://foodinsight.org/2023-food-and-health-survey/ (last accessed November 24, 2025).

*Overview of Ascorbic Acid and Defendant's "100% Juice" Claims*

15.    Ascorbic acid (also known as Vitamin C) is a popular food additive used for its flavoring, nutritional fortification, and preserving functions. Although ascorbic acid can be derived from natural sources such as citrus fruits, doing so is prohibitively expensive for companies that require the ingredient in large quantities.[6] As such, most ascorbic acid is commercially produced, and manufactured, through extensive chemical processing.[7]  In fact, the USDA found that "all commercial ascorbic acid [is] synthetically derived."[8] The reason for this is that, "[w]hile ascorbic acid is naturally produced … its reactive nature makes isolation of the substance from natural sources challenging, which has resulted in all commercial ascorbic acid being synthetically derived."[9]

16.    Ascorbic acid functions as an antioxidant that helps prevent microbial growth and oxidation in food products, thereby preserving their color and freshness. Tellingly, the Food and Drug Administration ("FDA") lists "ascorbic acid" under the heading "Subpart D - Chemical Preservatives." 21 C.F.R. § 182.3013. The FDA also regulates the use of ascorbic acid in the formulation of wine and juice "to prevent oxidation of color and flavor components of juice," and it "may be added to grapes, other fruit (including berries), and other primary wine making materials or to the juice of such materials." 27 C.F.R. § 24.246. The FDA also regulates ascorbic acid in the formulation of canned juices. *See e.g.*, 21 C.F.R. § 145.110(a)(2)(viii) (permitting ascorbic acid to be used in "Canned apple sauce" as "as an antioxidant preservative[.]").

---

[6] Dolchem Quality Chemicals, *Ascorbic Acid Journey: From Production to Applications*, available at: https://www.dolchem.com/blog/ascorbic-acid-journey-from-production-to-applications/ (last accessed November 24, 2025).
[7] *Id.*
[8] U.S. Dep't of Agric., USDA National Organic Program, *Ascorbic Acid* 3 (2019), https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf (last accessed November 24, 2025).
[9] *Id.*

17.     Furthermore, the FDA classifies and identifies ascorbic acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of how ascorbic acid is used as a preservative in beverages and other products.[10] The FDA's view of this matter is further bolstered by a Warning Letter that it sent to Chiquita Brands International, Inc., indicating that Chiquita's "Pineapple Bites" products were misbranded within the meaning of section 403(k) of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 343(k), because "they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions."[11]

18.     Although Defendant identifies ascorbic acid as a source of vitamin C, based on the FDA's extensive regulations, the inclusion of ascorbic acid also has a preservative effect on the juice component of the Products. This is particularly true given that ascorbic acid can function as a preservative even when used in low amounts.[12]

19.     In any event, even if the Products' ascorbic acid does not, in fact, function as a preservative in the Products, it nonetheless qualifies as a preservative given that it has the capacity or tendency to preserve food products. *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends* to prevent or retard deterioration,") (emphasis added); *see also* Merriam-Webster's Dictionary (defining

---

[10] https://public4.pagefreezer.com/browse/FDA/31-12-2022T07:59/https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors (last accessed November 24, 2025).

[11] FDA, *Warning Letter to Chiquita Brands International, Inc. and Fresh Express Incorporated* (Oct. 6, 2010), available at https://wayback.archiveit.org/7993/20170112194314/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2010/ucm228663.htm (last November 24, 2025).

[12] *See* Doores, S., 1993. *Organic acids*. In: Davidson, P.M., et al. (Eds.), *Antimicrobials in Food* CRC Press, pp. 95-136. http://base.dnsgb.com.ua/files/book/Agriculture/Foods/Antimicrobials-in-Food.pdf (last accessed November 24, 2025).

"preservative" as "something that preserves or has the power of preserving.");[13] Oxford English Dictionary (defining "preservative" as "[t]ending to preserve or capable of preserving") (emphasis added).[14]

20.    To make matters worse, Defendant's "100% Juice Blend" misrepresentations also run afoul of pertinent FDA regulations. Specifically, the FDA provides that:

"If the beverage contains 100 percent juice and also contains non-juice ingredients… [and] the 100 percent juice declaration appears on a panel of the label that does not also bear the ingredient statement, it must be accompanied by the phrase "with added — — — — — ," the blank filled in with a term such as "ingredient(s)," "preservative," or "sweetener," as appropriate (e.g., "100% juice with added sweetener")[.]"  21 C.F.R. § 101.30(b)(3).

21.    Defendant's Products do not follow this rule. In fact, after consumers purchase the Products online, Defendant delivers the Products with the disclaimers on their physical labels:

---

[13] *Preservative*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last accessed November 24, 2025).
[14] *Preservative*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=preservative (last accessed November 24, 2025).



22.    Setting aside Defendant's bait-and-switch practices, the minuscule disclaimers depicted above still fail to comply with the FDA's requirements. Specifically, the Products contain the statement "with added ingredients" or "with added Vitamin C." But that is not an "appropriate" modifier, as "preservative" should have been used instead. For instance, the FDA's

Guidance for Industry A Food Labeling Guide[15] provides the following questions and answers on the subject:

> **J23.** I have a 100% juice drink and add a non juice ingredient. May I still call it 100% juice?
>
> **Answer:** If the added ingredient does not dilute the juice or, for an expressed juice, change its volume, you may continue to call it 100% juice but the percent juice statement must identify the added ingredient, e.g., "100% juice with added preservative." 21 CFR 101.30(b)(3) and 101.54(e).
>
> **J.24.** What if the added substance is also a nutrient such as Vitamin C (ascorbic acid)?
>
> **Answer:** If ascorbic acid is added at levels consistent with fortification of the juice, a declaration as part of the percent juice statement would constitute a nutrient content claim which would trigger compliance with more claims including the required accompanying information. If it were added at the level used as a preservative, then a statement such as 100% juice with preservative could be used. In this case it would be listed in the ingredient statement as a preservative in accordance with 101.22(j).

23.    Given that artificial preservatives are undesirable by consumers buying what they perceive as a natural 100% juice product, it is not appropriate, and is misleading, for Defendant to simply state "with added ingredients" or "with added vitamin C" as opposed to "with added preservatives." Otherwise, the term "as appropriate" would be read out of the statute. The difference between "with added ingredients," "with added vitamin C," and "with added preservatives" is stark for consumers. Given the rest of the labeling, a reasonable consumer

---

[15] https://www.fda.gov/files/food/published/Food-Labeling-Guide-%28PDF%29.pdf (last accessed November 24, 2025).

seeing the statement "with added ingredients" or "with added vitamin C" would have no reason, based on the rest of the Products' front labeling, to think that there was anything artificial, let alone artificial preservatives, in the Products. Such reasonable consumers would have no reason to think that they needed to look elsewhere on the Products' labels to check whether artificial preservatives are present in the Products.

24.    Under 21 C.F.R. § 101.22(c), "[a] statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food." "The term chemical preservative means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22(a)(5).

25.    Here, in the context of the overall label, and given the instructions of 21 C.F.R. § 101.30(b)(3) to disclose preservatives on the front label of the Products, disclosing the presence of the artificial preservatives in small print, on the back of the Products' labels, did not render the "statement likely to be read by the ordinary person under customary conditions of purchase and use of such food." Reasonable consumers buying what they believe are natural, real 100% juice products have no reason to go searching the rest of the Products' labels to see whether artificial/chemical ingredients are present in the Products.

26.    Although Plaintiff does not seek to enforce the FDA, Defendant's non-compliance illustrates its misconduct.

27.    Defendant's misleading and deceptive practices proximately caused harm to

Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action on behalf of herself and all other similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3). Specifically, the Classes are defined as:

**Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products primarily for personal, family or household purposes, and not for resale.

**Nationwide Amazon Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products from Amazon.com primarily for personal, family or household purposes, and not for resale.

**New York Subclass:** All persons residing in New York who, during the maximum period of time permitted by the law, purchased Defendant's Products primarily for personal, family or household purposes, and not for resale.

**New York Amazon Subclass:** All persons residing in New York who, during the maximum period of time permitted by the law, purchased Defendant's Products from Amazon.com primarily for personal, family or household purposes, and not for resale

29.     The Classes do not include (1) Defendant, its officers, and/or its directors; or (2) the Judge to whom this case is assigned and the Judge's staff.

30.     Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

31.    *Community of Interest*: There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

32.    *Numerosity*: While the exact number of members of the Classes is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions. Members of the Classes may also be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

33.    *Existence and predominance of common questions of law and fact*: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes. These common legal and factual questions include, but are not limited to:

(a)    Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

(b)    Whether Defendant fraudulently induced Plaintiff and the members of the Classes into purchasing the Products;

(c)    Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof;

(d)    Whether Plaintiff and the members of the Classes are entitled to statutory damages; and

(e)    Whether Plaintiff and the members of the Classes are entitled to attorney's fees and costs.

34.    *Typicality:* The claims of the named Plaintiff are typical of the claims of other

members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

35.    *Adequacy*: Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Classes because she has no interests which are adverse to the interests of the members of the Classes. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained skilled and experienced counsel.

36.    Moreover, the proposed Classes can be maintained because they satisfy both Rule 23(a) and 23(b)(3) because questions of law or fact common to the Classes predominate over any questions affecting only individual members and a Class Action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a)    The expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek to redress their claims other than through the procedure of a class action;

(b)    If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would cause members of the Classes to seek to redress their claims other than through the procedure of a class action; and

(c)    Absent a class action, Defendant likely will retain the benefits of its wrongdoing, and there would be a failure of justice.

## CAUSES OF ACTION

### COUNT I
### Violation of State Consumer Protection Statues[16]
### (On Behalf of Plaintiff and the Nationwide Class)

37.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

38.     The Consumer Protection Statutes of the Nationwide Class members prohibit the use of deceptive, unfair, and misleading business practices in the conduct of trade or commerce.

39.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by misrepresenting that the Products are made from "100% Juice." Despite those representations, however, the Products contain "ascorbic acid"— a non-juice synthetic preservative.

40.     The foregoing deceptive acts and practices were directed at consumers.

---

[16] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include but are not limited to: Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. §§ 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Cal. Bus. & Prof. Code § 17200, et seq.; Cal. Civ. Code §1750, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Conn. Gen Stat. Ann. § 42- 110, et seq.; 6 Del. Code § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann.§ 501.201, et seq.; Ga. Code Ann. § 10-1-390, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code. Ann. § 48-601, et seq.; 815 ILCS 501/1, et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; LSA-R.S. 51:1401, et seq.; Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.; Md. Code Ann. Com. Law, § 13-301, et seq.; Mass. Gen Laws Ann. Ch. 93A, et seq.;  Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F, et seq.; Mo. Rev. Stat. § 407, et seq.; Neb. Rev. St. §§ 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8, et seq.; N.M. Stat. Ann. § 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15, et seq.; Ohio Rev. Code Ann. § 1345.01, et seq.; Okla. Stat. tit. 15 § 751, et seq.; Or. Rev. Stat. § 646.605, et seq.; 73 P.S. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1- 5.2(B), et seq.; S.C. Code Ann. §§ 39-5- 10, et seq.; S.D. Codified Laws § 37-24-1, et seq.; Tenn. Code Ann. § 47-18-101, et seq.; Tex. Code Ann., Bus. & Con. § 17.41, et seq.; Utah Code. Ann. § 13-11-175, et seq.; 9 V.S.A. § 2451, et seq.; Va. Code Ann. § 59.1-199, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

41.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

42.     As a result of Defendant's deceptive practices, Plaintiff and the Nationwide Class members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

43.     On behalf of herself and the Nationwide Class members, Plaintiff seeks to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT II
### Violation of State Consumer Protection Statues
### (On Behalf of Plaintiff and the Nationwide Amazon Class)

44.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

45.     The Consumer Protection Statutes of the Nationwide Amazon Class members prohibit the use of deceptive, unfair, and misleading business practices in the conduct of trade or commerce.

46.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by misrepresenting that the Products are made from "100% Juice." Despite those representations, however, the Products contain "ascorbic acid"— a non-juice synthetic preservative.

47.     The foregoing deceptive acts and practices were directed at consumers.

48.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

49.     As a result of Defendant's deceptive practices, Plaintiff and the Nationwide Amazon Class members suffered an economic injury because they would not have purchased (or

paid a premium for) the Products had they known the veracity of Defendant's

misrepresentations.

50.     On behalf of herself and the Nationwide Amazon Class members, Plaintiff seeks

to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys'

fees and costs.

**COUNT III**
**Violation of New York G.B.L. § 349**
**(On Behalf of Plaintiff and the New York Subclass)**

51.     Plaintiff incorporates by reference each of the allegations contained in the

foregoing paragraphs of this Complaint as though fully set forth herein.

52.     New York's General Business Law § 349 prohibits deceptive acts or practices in

the conduct of any business, trade, or commerce.

53.     In its sale of Products throughout the state of New York, at all relevant times

herein, Defendant conducted business and trade within the meaning and intendment of New

York's General Business Law § 349.

54.     Plaintiff and the New York Subclass members are consumers who purchased the

Products from Defendant for their personal use.

55.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair,

and misleading acts and practices by representing that the Products are comprised of "100%

Juice." Despite those representations, however, the Products contain "ascorbic acid"— non-juice

synthetic preservatives.

56.     The foregoing deceptive acts and practices are misleading in a material way

because they fundamentally misrepresent the nature and value of the Products.

57.     As a result of Defendant's deceptive practices, Plaintiff and the New York

Subclass members suffered an economic injury because they would not have purchased (or paid

a premium for) the Products had they known the veracity of Defendant's misrepresentations.

58.     On behalf of herself and the New York Subclass members, Plaintiff seeks to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

<u>COUNT IV</u>
**Violation of New York G.B.L. § 349**
**(On Behalf of Plaintiff and the New York Amazon Subclass)**

59.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

60.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

61.     In its sale of Products throughout the state of New York, at all relevant times herein, Defendant conducted business and trade within the meaning and intendment of New York's General Business Law § 349.

62.     Plaintiff and the New York Amazon Subclass members are consumers who purchased the Products from Defendant for their personal use.

63.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by representing that the Products are comprised of "100% Juice." Despite those representations, however, the Products contain "ascorbic acid"— non-juice synthetic preservatives.

64.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

65.     As a result of Defendant's deceptive practices, Plaintiff and the New York Amazon Subclass members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's

misrepresentations.

66.     On behalf of herself and the New York Amazon Subclass members, Plaintiff seeks to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs

### COUNT V
### Violation of New York G.B.L. §350
### (On Behalf of Plaintiff and the New York Subclass)

67.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

68.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

69.     Defendant violated New York General Business Law § 350 by representing on the packaging of the Products that the Products are comprised of "100% Juice." Despite those representations, however, the Products contain "ascorbic acid"— non-juice synthetic preservatives.

70.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

71.     Defendant's misrepresentations have resulted in consumer injury or harm to the public interest.

72.     As a result of Defendant's false advertising, Plaintiff and the New York Subclass members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

73.     On behalf of herself and the New York Subclass members, Plaintiff seeks to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## COUNT VI
## Violation of New York G.B.L. §350
## (On Behalf of Plaintiff and the New York Amazon Subclass)

74.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

75.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

76.     Defendant violated New York General Business Law § 350 by representing on the packaging of the Products that the Products are comprised of "100% Juice." Despite those representations, however, the Products contain "ascorbic acid"— non-juice synthetic preservatives.

77.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

78.     Defendant's misrepresentations have resulted in consumer injury or harm to the public interest.

79.     As a result of Defendant's false advertising, Plaintiff and the New York Amazon Subclass members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

80.     On behalf of herself and the New York Subclass members, Plaintiff seeks to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)      For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Classes; and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)      For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c)      For compensatory, statutory and punitive damages in amounts to be determined by the Court and/or jury;

(d)      For prejudgment interest on all amounts awarded;

(e)      For an order of restitution and all other forms of equitable monetary relief; and

(f)      For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: November 24, 2025                    Respectfully submitted,

By:  /s/ Adrian Gucovschi
     Adrian Gucovschi, Esq.

**GUCOVSCHI LAW FIRM, PLLC**
140 Broadway, FL. 46
New York, NY 10005
Tel: (212) 884-4230
adrian@gucovschilaw.com

*Counsel for Plaintiff and the Classes*